United States District Court
Southern District of Texas
**ENTERED**
August 04, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICK N. SWEENEY,<br>*Plaintiff*, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:25-CV-1558 |
| MARIO K. CASTILLO, J.D., ET AL.,<br>*Defendants*. | §<br>§<br>§ | |

**MEMORANDUM AND ORDER**

Plaintiff, proceeding pro se, filed an Original Complaint (misnamed Original Petition) against multiple individuals asserting that they violated, and conspired to violate, his First Amendment right to free speech by terminating him as an adjunct professor at Lone Star College (LSC).[1] ECF 1. The Court, on November 21, 2025, issued a Memorandum and Order granting Defendants' Motions to Dismiss as to all claims except Plaintiff's § 1983 First Amendment retaliation claims against Defendants in their individual capacities.[2] ECF 36. As ordered, Defendants filed a timely Second Motion to Dismiss. ECF 37. Plaintiff did not file a Response, opting instead to file an objection titled "Magistrate Cannot Assist Parties" that accuses the

[1] The parties have consented to the jurisdiction of this United States Magistrate Judge for all purposes, including final judgment. ECF 19.

[2] The individual Defendants are Lone Star College Chancellor Mario Castillo, Vice Chancellor Legal Affairs and General Counsel Nancy Molina, Executive Vice Chancellor Academics Seelpa Keshvala, President Lone Star College-Houston North Quentin Wright, Vice President of Instruction, Lone Star College-Houston North John Maynard, Chief Conduct Officer Lone Star College-Houston North Sheldon Moss, and Human Resources Director Lone Star College-Houston North Ruth Hutyra. ECF 1 ¶3.

Court and opposing counsel of misconduct but does not substantively address qualified immunity.[3] ECF 38. Having reviewed the parties' submissions and the law, the Court grants Defendants' Second Motion to Dismiss.[4]

## I. Background

LSC entered into a contract with Plaintiff in August 2024 to teach three dual-credit "HIST1301" history classes.[5] ECF 1 at 3. One of the required topics covered in HIST1301 is slavery. *Id.* at 4. Plaintiff contends that "immature students . . . often cannot distinguish between learning about racist ideology in an historical setting and racism." *Id.* Plaintiff further alleges that the students were "disinterested," so he instituted a "warm-up" exercise of writing a question on the board before every class that the students had five minutes to answer. *Id.* at 5. Plaintiff also alleges that on one occasion he told a student who had her head down to "wake-up." *Id.* at 6-7. On another occasion he told a student to take off her hood and remove her earbuds. *Id.* Plaintiff believes these events gave rise to the complaints that precipitated his termination.

---

[3] The majority of Plaintiff's brief, which the court will refer to as his "Response," addresses alleged misconduct by defense counsel Stephen J. Quezada, including the violation of consumer protection statutes. Quezada is not a defendant in this case. Plaintiff has filed a separate lawsuit against Quezada and co-counsel Brianna M. Herman. *See Sweeney v. Quezada*, Civil Action No. 4:25cv4621 (pending before District Judge George C. Hanks).

[4] The Court has reviewed and considered all arguments and issues raised by the parties, whether or not explicitly addressed herein.

[5] A dual-credit class is one that allows a high school student to get Texas high school credit and college credit. The classes Plaintiff taught were in association with Victory Early College School (VECHS). ECF 1 at 2.

Plaintiff's Original Complaint describes complaints by students and at least one parent about what they viewed as racist behavior and comments by Plaintiff. *Id.* at 7-20. Defendant John Maynard, Vice President of Instruction for LSC North, notified Plaintiff by email on September 27, 2024 that Plaintiff was "being placed on administrative leave effective immediately due to the alleged use of racially based epithets and/or slurs." *Id.* at 9 (emphasis in original). Maynard met with multiple students after his September 27, 2024 email to Plaintiff. *Id.* at 12-13. Maynard then met with Plaintiff on September 30, 2024 and asked him about a variety of statements students claimed Plaintiff had made. *Id.* at 15. Plaintiff also alleges that Maynard asked Plaintiff about a variety of comments Plaintiff made in class that were not included in a student complaint. *Id.* at 17. Defendant Ruth Hutyra, Human Resources Director for LSC North, attended the September 30, 2024 meeting as a witness but did not speak. *Id.* at 15. On October 18, 2024, Defendant Quentin Wright, President of LSC North, notified Plaintiff that Plaintiff was "being terminated due to a violation of Section VI.D.12 of the Lone Star College Policy." ECF 1-3 at 52.

Plaintiff filed an EEOC charge of age discrimination under the ADEA and race discrimination under Title VII and the EEOC issued a Notice of Right to Sue on February 27, 2025. ECF 1-3 at 53-54; ECF 1-4 at 5-7. Plaintiff filed his Original Complaint on April 4, 2025. As noted above, only Plaintiff's § 1983 First

Amendment retaliation claims against Defendants in their individual capacities remain pending. ECF 36.

**II. Rule 12(b)(6) Standards**

Defendants' Motion to Dismiss on grounds of qualified immunity is properly analyzed under Federal Rule of Civil Procedure 12(b)(6) standards. *Aguero Ramirez v. Pharr San Juan Alamo Indep. Sch. Dist*., No. 7:24-CV-00505, 2026 WL 899434, at *3 (S.D. Tex. Mar. 30, 2026). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III. Analysis

### A. Plaintiff's unclear Original Complaint necessitated further briefing.

As a threshold matter, the Court quickly addresses Plaintiff's unfounded and scurrilous assertions that the Court's decision to allow Defendants to file a Second Motion to Dismiss is the result of retaliation, conspiracy, collusion, and bias. ECF 38. The Court noted at the start of the November 21, 2025 Memorandum and Order that Plaintiff's Original Compliant "does not specify whether Plaintiff is suing the individual Defendants in their official or individual capacity." ECF 36 at 1. Defendants' Motions to Dismiss addressed official capacity claims. Nonetheless, Defendants preserved a qualified immunity defense by asserting that "government employees are entitled to official immunity when sued in their individual capacity for official acts."[6] ECF 5 at 6; ECF 8 at 6; ECF 10 at 6. The Court, as it must, construed Plaintiff's pro se Original Complaint liberally and determined Plaintiff intended to assert individual capacity First Amendment Retaliations claims. *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (holding the court applies a more lenient standard when analyzing the complaints of pro se plaintiffs).

---

[6] *Carter v. Diamond URS Huntsville, LLC*, 175 F. Supp. 3d 711, 742 (S.D. Tex. 2016) (stating that official immunity from state law claims and qualified immunity from federal claims are "substantially the same."); *Martinez v. Harris Cnty., Texas*, No. 24-20194, 2025 WL 914309, at *6 (5th Cir. Mar. 26, 2025) (stating the test for official immunity is "derived substantially" from the test for qualified immunity for § 1983 actions).

Qualified immunity is immunity from suit, not just immunity from liability, and therefore the Court must address qualified immunity at the "earliest possible stage of the litigation." *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022) (quoting *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (per curiam)). A Plaintiff asserting a claim against an individual asserting qualified immunity must be able to survive a motion to dismiss without any discovery. *Id.* at 311 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 684-85 (2009)). For these reasons, and no other, the Court stayed discovery and permitted Defendants to file a Second Motion to Dismiss to address Plaintiff's individual capacity First Amendment retaliation claims. ECF 36 at 2.

**B. First Amendment Retaliation Standards**

Section 1983 provides a cause of action against individual state employees who deprive a plaintiff of a federal constitutional or statutory right while acting under color of state law. *Lindke v. Freed*, 601 U.S. 187, 194 (2024). The usual test for evaluating a First Amendment retaliation claim by a government employee involves a "threshold layer," i.e., "whether the employee spoke as a citizen or instead made "statements pursuant to [his] official duties." *Wetherbe v. Texas Tech Univ. Sys.*, 138 F.4th 296, 303 (5th Cir. 2025). If the employee spoke as a citizen, the employee must also prove that "(1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking

outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Id.*

In determining whether an employee engaged in speech on a matter of public concern the Court considers "the content, form, and context of a given statement, as revealed by the whole record." *Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019). The Supreme Court has held that classroom discussion is protected by the First Amendment because academic freedom is "a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." *Buchanan v. Alexander*, 919 F.3d 847, 852 n. 9 (5th Cir. 2019) (quoting *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)). However, First Amendment protection of classroom speech is limited. "In the college classroom context, speech that does not serve an academic purpose is not of public concern." *Id.* at 853. Whether a professor's classroom speech addressed a matter of public concern is a question of law for the Court. *Id.*

**C. Qualified Immunity Standards**

Lone Star College is a Texas junior college organized under Chapter 130 of the Texas Education Code. *Young-Trezvant v. Lone Star Coll. Sys.*, No. 23-20551, 2024 WL 2794483, at *1 (5th Cir. May 31, 2024). The Defendants are all employees of Lone Star College. *See* at 1, n.2 *supra*. As state employees, Defendants are protected by qualified immunity from suits for money damages for

actions taken in the course of their employment. *Wetherbe v. Texas Tech Univ. Sys*., 138 F.4th 296, 301 (5th Cir. 2025). Therefore, to survive Defendants' Motion to Dismiss Plaintiff's claims for First Amendment retaliation, Plaintiff must plead sufficient facts to overcome Defendants' qualified immunity. *Id.* at 30. (holding Dean entitled to qualified immunity from former professor's First Amendment retaliation claim). To overcome qualified immunity, a plaintiff must plausibly allege facts that show: (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the alleged violation. *Id.* at 301 (citations omitted). A district court may address the two prongs in any order and must dismiss the case if plaintiff fails to satisfy either. *Id.* at 303.

**D. Plaintiff fails to plausibly allege Defendants' violation of a clearly established First Amendment right.**

Defendants move to dismiss Plaintiff's First Amendment retaliation claims based on qualified immunity because Plaintiff does not allege facts that satisfy either prong of the qualified immunity analysis.

Plaintiff's Original Complaint sets forth in detail alleged discrepancies between questions Plaintiff was asked by President Maynard in the meeting regarding student complaints and the accusations reported in the student complaints. *See generally* ECF 1. However, even in the specific section titled "Plaintiffs [sic] Statement Were Protected Speech," the Original Complaint fails to identify the specific statements that constitute protected speech and which led to his termination.

*Id*. ¶¶53-57. Plaintiff's "Response" neither offers details nor provides clarity. *See generally* ECF 38. The closest Plaintiff comes to alleging protected speech on a matter of public concern is paragraph 53 of the Original Complaint, which recounts statements in a September 27, 2024 email from a student's parent to the Lonestar College Executive Counsel, a copy of which is attached to the Original Complaint. ECF 1-2 at 27. The email states:

> My daughter, along with several other students, has accused Mr. Sweeney of making racist and deeply inappropriate comments during a recent lecture on the topic of slavery. According to my daughter, Mr. Sweeney singled out all the Black American students in the classroom, including her, and explicitly referred to them as "slaves." Even more troubling, he allegedly told one of the young Black male students that he "would make a good slave" and went as far as to say that if he were a slave owner, he would buy him.

*Id.* Significantly, Plaintiff does not deny making the alleged comments but only contends that these comments were not included in any Student Civil Rights Complaint produced to him. ECF 1 ¶56. Further, while the comments at issue were made *during a lesson on slavery*, Plaintiff has failed to allege facts sufficient to show the comments *served an academic purpose* as required by the Fifth Circuit and the Supreme Court. *See Buchanan v. Alexander*, 919 F.3d 847, 853 (5th Cir. 2019); *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Plaintiff alleges that:

> [P]ointing out African American students to use them in his examples of slavery, saying that all the black students in that class could have been slaves, that white students could have been slave owners and asking students what they thought were the benefits of having a slave are all discussion points to help students understand slavery on a

> personal level rather than some distant abstract concept. African American, Hispanic and Caucasian students alleged Plaintiff "singled them out" while no student or administrator identified how Plaintiff's treatment of students was disparate, unreasonably interfered with or limited any student's ability to participate in or benefit from College programs and activities or violated a civil right.

ECF 1 ¶67. The first sentence of the quoted paragraph may be Plaintiff's sincere opinion but singling out African American students as individuals who could have been enslaved, even in an effort to make students consider the effects of slavery on a personal level, does not serve a legitimate academic purpose. Moreover, while the second sentence of the above paragraph may be true, whether speech serves an academic purpose is not determined simply by the lack of a disparate impact or interference with participation with benefits, theories borrowed from non-First Amendment discrimination cases. *See Buchanan*, 919 F.3d at 853 (explaining that whether speech is a matter of public concern is determined by "the content, form, and context of a given statement, as revealed by the whole record").

Plaintiff must demonstrate that Defendants violated a clearly established constitutional right. Plaintiff cannot rest on "generalized propositions" to show that a right is clearly established and instead must "identify 'similar circumstances' in previous cases that established 'particular conduct as unlawful.'" *Thorpe as next friend A.B. v. Weaver*, No. 24-40472, 2026 WL 1969094, at *4 (5thCir. July 8, 2026) (citing *Stevenson v. Tocé*, 113 F.4th 494, 504 (5th Cir. 2024)). Thus, while it is true that classroom speech that serves an academic purpose is protected, to overcome

qualified immunity Plaintiff must present controlling authority establishing that his particular comments are entitled to First Amendment protection. *Wetherbe*, 138 F.4th at 301–02 (holding that "[a]s a general proposition, to show a violation of clearly established law, [a plaintiff] must identify a case that put [the defendant] on notice that his *specific conduct* was unlawful" (change in original, emphasis added, citation omitted)). The best Plaintiff has done is cite to a 2001 Sixth Circuit case, *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 682 (6th Cir. 2001). ECF 1 ¶5. The fact that Plaintiff had to reach outside of the Fifth Circuit for case support underscores his failure to sufficiently allege violation of a clearly established law. *Hardy* is also readily distinguished from this case. Professor Hardy alleged First Amendment retaliation when he was disciplined after a student complained about his use of the "n-word" and "bitch" in class. *Id.* at 674. Professor Hardy used the offensive terms in a lecture on the power and effect of language, such as the n-word and bitch, in a course on interpersonal communications. *Id.* at 674-75. The Sixth Circuit found Hardy's speech protected because it was germane to the subject of the power and effect of language and was limited to an academic discussion of the words in question. *Id.* at 679. The case contained no allegation that Professor Hardy singled out any student in class as an example of the "n-word" or "bitch." In sum, Plaintiff has failed to cite authority that would have put Defendants on notice that his comments were constitutionally protected speech.

**E. Plaintiff fails to satisfy the causation element of a First Amendment retaliation claim.**

Even if Plaintiff's Original Complaint were found to allege protected speech on a matter of public concern, Plaintiff must also plausibly allege that "the protected speech motivated the defendant's conduct." *Wetherbe*, 138 F.4th at 303 (5th Cir. 2025). Although the letters informing Plaintiff of his suspension and termination were signed by Wright, Plaintiff neither alleges who made the decision to terminate his employment nor the role any individual Defendant played in the termination decision. Plaintiff's Original Complaint fails to allege anything other than the conclusory recitation of legal principles holding that non-decisionmakers can be liable for First Amendment retaliation without any factual allegations tied to any Defendant. ECF 1 ¶¶68-69. Plaintiff specifically accuses only Maynard of misconduct, whom he alleges "tampered with witnesses" and "fabricated allegations." ECF 1 ¶¶36, 74. But these claims are belied by Plaintiff's own allegations and evidence, attached to his Complaint, establishing multiple complaints of Plaintiff's use of racially charged comments in the classroom. *See, e.g.,* ECF 1-2 at 10. 16, 18-24, 27; ECF 1-3 at 2-30. Furthermore, the Original Complaint fails to allege that Maynard communicated to a decisionmaker any allegedly fabricated complaints that led to Plaintiff's termination, as opposed to documented complaints.

## IV. Conclusion and Order

For all the reasons discussed above, Defendants' Second Motion to Dismiss (ECF 37) is GRANTED. It is ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE. The Court will issue a separate Final Judgment.

Signed on August 04, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge